## HUMBLE OIL & REFINING CO. v. MANZIEL et al.

### No. 5991.

Court of Civil Appeals of Texas. Texarkana.

Oct. 22, 1942.

Jones & Jones, of Mineola, and Felix A. Raymer, E. E. Townes, and R. E. Seagler, all of Houston, for appellant.

Pollard, Lawrence & Reeves, of Tyler, for appellees.

WILLIAMS, Justice.

In this suit of Bobby Manziel, alleged leaseholder, joined by others, appellees herein, against Humble Oil & Refining Company, an alleged leaseholder, appellant herein, plaintiffs alleged the statutory action in trespass to try title, with an additional plea for an interlocutory decree in the form of a mandatory injunction. Upon a hearing, the trial court granted the mandatory injunction as prayed for, which required appellant to deliver immediate possession of the parcel of land in controversy to appellees and restrained appellant from thereafter interfering with the land sued for until final disposition of the case on its merits. Supersedeas was granted. Bond was filed and approved and the interlocutory decree is now in suspense pending appeal. The court was of the opinion, it being so recited in the judgment, "that the plaintiffs were in actual possession of the property in controversy prior to and at the time of their forcible dispossession thereof by the defendants, and prior to the filing of this suit, and that the last peaceable holding of such property before the filing of this suit was by the plaintiffs. * * *"

The two propositions presented are grounded upon appellant's claim that no forcible invasion of an actual possession was shown by the evidence. The legal evidence introduced with respect thereto is without conflict and presents the question if such evidence as a matter of law is sufficient to support the conclusions as found by the trial court.

The triangular .52-acre parcel of land here involved, described by a witness as a "kind of a drain," was bounded on its south and west with wire fences and on its east by a public road which ran in a northwestern and southeastern direction. This triangle and land adjacent thereto were

situated in a swag or low place. Plaintiffs' witness, a resident of the community for forty years, when asked what tract it had been used in connection with, replied, "It was first owned by Jack Brown, who sold it to Mr. Reese, and after the road was changed, Reese sold a part to Golightly, and later Golightly sold it to Mr. Green; that none of the triangle had been enclosed or been used in connection with any surrounding tract." It had never been cultivated or cleared for such purpose. The triangle had never been enclosed with a fence prior to its enclosure by appellant. Manziel, who purchased an oil and gas lease in December 1940, testified that when he first saw the triangle there were no improvements on it. From the above observations it can not be seriously contended, and appellees do not assert that the triangle was in the actual possession of any one up to the last-mentioned date (December 1940). After Manziel had purchased the alleged lease which described a triangular piece of land, he caused it to be surveyed. On May 26, 1941, he filed an application with the Railroad Commission of Texas for a permit to drill on a .2-acre parcel of land, description of which does not appear in the record. This application for permit was contested by appellant, and denied July 30, 1941. Appellees on August 28, 1941, sued appellant, alleging a statutory trespass to try title action and described a triangular tract of land, and later, on September 10, 1941, dismissed their suit. Thereafter, and prior to November 7, 1941, date of filing of the instant suit, appellant moved upon the triangle by enclosing it with a fence and erecting a doghouse thereon. At the time the instant suit was filed, and at all times since, with an employee occupying the doghouse, appellant has so remained in possession.

If Manziel or any one of the appellees, or any alleged predecessor in title was in actual possession of the property in controversy prior to and at the time of above-mentioned entry by appellant as found by the trial court, such conclusion must rest solely upon the acts and conduct of Manziel as detailed by him. His testimony verbatim follows:

"Q. What, if any, improvements were upon that tract of land at that time, when you first saw it? A. There wasn't any at that time.

"Q. After you purchased, did you go in and upon the land at subsequent times? A. Yes, sir.

"Q. What did you go in there upon it for? A. Well, see about where I could make a location for an oil well and cleaning up the brush off of there; see about where I would put my pits. That is all.

*     *     *     *     *

Q. Now, you stated in answer to counsel's question that when you had the survey made, and had the location placed in the center of the tract, that you could go on the land, on and across it at will? A. That is right.

"Q. Anybody else could too, couldn't they? A. I am sure they could

*     *     *     *     *

"Q. It was not enclosed with fence? A. No, sir.

"Q. You had no exclusive possession of the land, did you? A. No, sir.

"Q. Did you have anybody out there? A. No.

*     *     *     *     *

"Q. So, the denial of the permit by the Railroad Commission didn't change the status, or rather I should say this: After the Railroad Commission denied the permit to drill, you didn't in any way change the status of the property in so far as its enclosure was concerned of your exclusive possession of it? A. That is right.

"Q. The land was open during the entire pendency of the other suit? A. That is right.

"Q. Anybody could go across it and on it during the entire time your first suit was pending in this court? A. That is right."

The casual acts of Manziel in going upon the unenclosed, uncultivated and unimproved triangle for the purposes as stated by him prior to appellant's entry are insufficient to constitute an actual possession of the premises as contemplated by the rule which governs the disposition of this appeal, namely: "The status quo which will be preserved by a preliminary injunction is the last, actual, peaceable, noncontested status which preceded the pending controversy," 32 C.J. § 2, p. 21; Humble Oil & Refining Co. v. Neeks Drilling Co., Tex.Civ.App., 119 S.W.2d 169 and authorities there cited; Morgan v. Smart, Tex.Civ.App., 88 S.W.2d 769, and authorities there discussed. The "possession" contemplated within above authorities is the "actual" possession. "The word 'actual' in Webster's dictionary means to exist in reality and in fact and is opposed to potential, possible, speculative, hypothetical

or theoretical." In re Erickson, 10 A.2d 142, 146, 18 N.J.Misc. 5. See, also, Words & Phrases, Perm.Ed. Vol. 2, p. 206. "To constitute actual possession of land, there must be such an appropriation of the land by the claimant as will convey in the community where it is situated visible notice that the land is in his exclusive use and enjoyment, an appropriation manifested by either inclosing, cultivating, improving or adapting it to such uses as it is capable of." Lofstad v. Murasky, 152 Cal. 64, 69, 91 Pac. 1008, 1009. The cases cited by appellees, namely, Illinois Steel Co. v. Jeka, 123 Wis. 419; 101 N.W. 399; Webber v. Clarke, 74 Cal. 11, 15 Pac. 435; and Brand v. United States Car Co., 128 Ala. 579, 30 So. 60, recognize the rule above stated and are not in conflict. Constructive possession is not involved under this record, and if so involved in a final adjudication of title, it must rest on location of contested survey and land lines. As far as this record discloses, the triangle was not in nor had it ever been in the actual possession of any one prior to appellant's enclosure of it.

Actual possession not shown to have been vested in appellees prior to appellant's entry, the judgment of the trial court is without basis in law. 32 C.J. § 2, p. 21; Humble Oil & Refining Co. v. Neeks Drilling Co., supra; Morgan v. Smart, supra.

Therefore, the judgment of the trial court will be reversed and the mandatory injunction dissolved and set aside.